# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| **PHILLIP DAREN SHOCKEY,** | |
| Movant, | |
| v. | Civil No. 19-03108-CV-S-MDH<br>Crim. No. 14-03072-01-CR-S-MDH |
| **UNITED STATES OF AMERICA,** | |
| Respondent. | |

## GOVERNMENT'S SUPPLEMENTAL RESPONSE AND SUGGESTIONS IN OPPOSITION TO MOVANT'S MOTION UNDER 28 U.S.C. § 2255 POST EVIDENTIARY HEARING

The respondent, the United States of America, respectfully submits the following supplemental response in opposition to the motion, under 28 U.S.C. § 2255, filed by movant Phillip Daren Shockey post the evidentiary hearing held on October 14, 2020.

### I. Procedural History

1. On August 27, 2014, a grand jury in the Western District of Missouri returned an indictment charging Shockey with, inter alia, conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344 and 1349 (D.E. 1).[1]

2. On January 14, 2015, Shockey pleaded guilty to conspiracy to commit bank fraud and agreed to a money judgment of $159,842.31 (D.E. 93 and/or Plea Agrmt. 2).

3. On May 8, 2015, Shockey's first attorney, Ian Lewis filed a motion to withdraw alleging a conflict of interest (D.E. 117).

---

[1] "D.E." denotes docket entry in criminal case 14-03072-01-CR-S-MDH.

4. On May 11, 2015, the United States Magistrate Judge in Springfield granted Lewis's motion to withdraw and appointed Jason Coatney to represent Shockey (D.E. 118).

5. On August 12, 2015, Shockey's Presentence Investigation Report was completed and filed with the Court that indicated Shockey had a total offense level of 30 (D.E. 149).

6. On December 28, 2015, the U.S. Probation and Parole Office filed its first Presentence Investigation Report Addendum that adjusted downward the total offense level from 30 to 28 (D.E. 183).

7. On March 8, 2016, Shockey had a sentencing hearing scheduled but he requested a continuance that was granted by the Court (D.E. 193).

8. On April 13, 2016, the U.S. Probation and Parole Office filed a second Presentence Investigation Report Addendum that outlined the total actual loss was $145,339.28 and the total intended loss was an additional $536,135.62 (D.E. 197).

9. On March 8, 2019, Shockey filed a motion under § 2255, seeking to vacate his conviction (2255 D.E. 1).[2] On March 25, 2019, Shockey filed a corrected motion, on court-approved forms, pursuant to an order from this Court (2255 D.E. 5).

10. On June 13, 2019, the Government filed its Suggestions in Opposition to Shockey's motion under § 2255 (2255 D.E. 12).

11. On October 2, 2019, the Court appointed attorney Brian Risley to represent Shockey (2255 D.E. 25).

12. On March 10, 2020, Shockey retained Brandon Sample as his legal counsel (2255 D.E. 33).

---

[2] "2255 D.E." denotes docket entry in civil case 19-03108-CV-S-MDH.

13. Due to COVID-19, the matter was set for an evidentiary hearing several times but a final hearing was held on October 14, 2020 where Shockey presented evidence to support his § 2255 arguments to vacate, set aside or correct his sentence (2255 D.E. 48).

## II. Shockey's Arguments for Relief

14. After pleading guilty to a plea agreement whereupon Shockey explicitly waived his right to appeal other than on very narrow exceptions, he filed his § 2255 motion (D.E. 1 and 5). The Government responded in opposition to his motion on June 13, 2019 (D.E. 12).

15. Shockey raised eight grounds[3] in his motion that his two attorneys, Ian Lewis and Jason Coatney were ineffective. The Respondent in this matter has summarized Shockey's issues below:

   a) He was never informed by his first defense attorney that he had a conflict during his attorney's representation of him and the general nature of that conflict;

   b) He was never a participant in the conflict inquiry by the Court;

   c) He informed his first defense attorney that he would not plead guilty until he (Shockey) was certain that the prosecutor had copies of fraudulent checks and that his first attorney did not provide him with copies of the fraudulent checks;

   d) His first attorney advised him that the plea agreement would be changed to reflect a loss amount of $145,339.28 instead of the actual amount of $159,842.31 that appeared on the plea agreement, relevant conduct would not apply to him (Shockey) because the amount was capped in the plea agreement, he would receive credit in the Western District of Missouri for the time he was serving in Arkansas and that his attorney agreed to make changes to the plea agreement after he (Shockey) actually pleaded guilty;

---

[3] D.E. 5-1 (pg. 1-2).

e) His second attorney advised him that he (Shockey) could not be charged with any amount of loss, even the loss amount that appeared in his plea agreement and that he (Shockey) could not legally be held responsible for losses based only on the presentence report and addendums;

f) He provided his second lawyer with evidence that four checks that he had could not be passed by him (Shockey) for the amounts that appeared on the checks and thus those checks should have not been included as intended loss;

g) He instructed his first attorney to investigate the checks that the Tulsa, Oklahoma police seized from his (Shockey) motel room and his first lawyer failed to do so;

h) He instructed his first attorney to file a motion to suppress the evidence seized from his motel room in Tulsa, Oklahoma and his first attorney failed to do so.

## II. Relevant Facts

16. On January 14, 2015, Shockey appeared before this Court and pleaded guilty to conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344 and 1349. The plea agreement contained a factual basis of the offense conduct for the guilty plea (D.E. 93, pg. 2-4). Shockey agreed that the statutory range of punishment for the offense was up to 30 years' imprisonment (D.E. 93, pg. 4-5). Shockey agreed to the sentencing procedures to be utilized by this Court, including the preparation of the presentence investigation report (PSR); the use of relevant conduct; the stipulated Sentencing Guidelines provisions; and the Court's discretion to vary from the advisory Sentencing Guidelines range (D.E. 93, pg. 4-11). Shockey waived his constitutional rights to a jury trial, his right to appeal or collaterally attack his conviction and sentence with certain exceptions (D.E. 93, pg. 11-13). Shockey affirmed that his guilty plea was knowing and voluntary (D.E. 93, pg. 15-16). Shockey stated that he was satisfied with his defense attorney (first attorney),

and that no threats or promises, other than those in the plea agreement, had induced him to plead guilty (D.E. 93, pg. 16). Shockey confirmed that he had read the plea agreement and discussed it with his defense counsel (D.E. 217, pg. 3-4). Shockey stated he had no questions regarding the plea agreement (D.E. 217, pg. 4). Shockey established that he was mentally competent to enter a guilty plea and that no promises, or threats of harm to him or his family, had induced him to plead guilty (D.E. 217, pg. 4-5). Shockey agreed to the charge and the statutory range of punishment (D.E. 211, pg. 5-7). And, by signing the plea agreement, Shockey consented to the sentencing Court procedures including the "judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of . . . [his] sentence . . . [in addition, he] also agree[d] that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay" (D.E. 93, pg.10).

17. On October 14, 2020, Shockey had his hearing before this Court in order to meet his burden of proof necessary for the relief he sought.

18. Shockey evidence rested solely upon his testimony under oath about his two attorneys that he now alleges were ineffective. Shockey alleged from the witness stand that his first attorney, Ian Lewis never informed him about his conflict of interest (D.E. 51 or 2255 Tr. Pg. 5).[4] Shockey refuted his knowing and voluntarily accepted plea agreement by testifying that he was promised by his defense attorney if he pleaded he was "looking at five to six [years]" (2255 Tr. Pg. 6). He emphatically insisted that Lewis "told [him] that with this judge and this courthouse – or this Court, the government, that this crime was a five to six-year deal. . . And [Lewis] raised his voice, said he didn't care what my PSI came back at, he knew this Court, knew this judge, and he knew I'd

---

[4] D.E. 51 will be subsequently referred as "2255 Tr. Pg.#" in civil case 19-CV-03108-MDH.

be looking at five to six years at the most if I plea out and plea out fast. That's exactly what he said, word for word" (2255 Tr. Pg. 6).

19.     Shockey stated after his attorney showed him the plea agreement and the agreement did not contain any language about the specific sentence that Shockey would receive. Shockey testified that Lewis told him "that would be a binding plea and this judge would not accept a binding plea, but he (Lewis) knew what would happen" (2255 Tr. Pg. 7).

20.     Shockey also testified that he had a problem with the dollar amounts in the plea agreement that Lewis explained to him prior to the guilty plea hearing. He stated that Lewis told him "that's something he would have to get fixed . . ." (2255 Tr. Pg. 8).

21.     Shockey also testified that he requested that Lewis file a motion to suppress. Shockey testified that Lewis told him "that would be a bad idea because this judge would definitely not – not allow that to happen and that if I requested it, it would make the judge mad and I'd end up with a larger sentence" (2255 Tr. Pg. 9).

22.     Shockey explained that he was never informed why Lewis filed his motion to withdraw from his case after his guilty plea. Shockey testified, "I never got no notice from him or anything and he refused to speak with me" (2255 Tr. Pg. 9).

23.     Shockey informed the Court that his second attorney, Jason Coatney did not object to four checks. According to Shockey, three of the checks were in the amount of $25,000 and one was in the amount of $200,000. Shockey testified that "[t]hose checks were stolen and that somebody had given to me and they were not prepared for passing (2255 Tr. Pg. 11). Shockey explained to the Court, "I may have eventually used the routing numbers on them. Never got around to it." He explained after questioning by his third attorney, Brandon Sample that he would eventually use the four checks to make other counterfeit checks (2255 Tr. Pg. 12). Shockey testified that he told

-6-
Case 6:19-cv-03108-MDH   Document 57   Filed 11/25/20   Page 6 of 20

Coatney he would have never used those checks for those amount that were on them and Coatney told Shockey that he would look into it (2255 Tr. Pg. 12).

24. Shockey also testified that he would have asked for another attorney had he known that Ian Lewis's father represented co-defendant Donald Spears (2255 Tr. Pg. 14).

25. Shockey testified that both of his court appointed attorneys lied to him and that is the basis of his 2255 (2255 Tr. Pg. 20). He testified that Lewis lied to him about the amount of time he would receive (5-6 years) (2255 Tr. Pg. 19) and Coatney lied to him about checking into the four checks that he admitted he would have eventually used those checks routing numbers to make other counterfeit checks (2255 Tr. Pg. 12) and not providing case law to support Shockey's objection (2255 Tr. Pg. 20). Shockey did not provide the Court any additional evidence other than his testimony.

26. The Government called Ian Lewis to the witness stand. Lewis testified that he has been with the United States Federal Public Defender's Office for 14 years (2255 Tr. Pg. 34). He recalled representing Shockey and met with him at least four to six times via in person or on the telephone (2255 Tr. Pg. 24-25). Lewis denied he ever told Shockey he would get five to six years if he pleaded guilty (2255 Tr. Pg. 26). Lewis also denied that he told Shockey that the Judge would not accept a binding plea (2255 Tr. Pg. 26-27). Lewis also testified that Shockey never told him to file a motion to suppress (2255 Tr. Pg. 27).

27. Lewis stated during the time he represented Shockey, he was not aware that his father represented a co-defendant in the conspiracy. He only became aware his father represented a co-defendant in this case after Shockey filed his response (D.E. 24) in his § 2255 motion (2255 Tr. Pg. 28).

28.     Lewis also explained that he withdrew from representing Shockey because he later learned that Shockey had provided information against D.A.  After the plea, Lewis became aware through an investigator in his office that another attorney in his office represented D.A.  Lewis testified that he filed a motion to withdraw the same afternoon he became aware of the conflict (2255 Tr. Pg. 29-30).  Lewis stated he never notified Shockey of the conflict and don't recall having any additional contact with Shockey after the guilty plea (2255 Tr. Pg. 30).

29.     Prior to Shockey pleading guilty, Lewis testified that he and/or his investigator went over discovery with Shockey and Lewis never received any objection from Shockey about pleading guilty (2255 Tr. Pg. 32-33).  Even after pleading guilty, Shockey never communicated with Lewis that he did not want to plead guilty or he wanted to go to trial (2255 Tr. Pg. 33).  Lewis also testified that he never any promises to Shockey about how much time he would serve (2255 Tr. Pg. 34).

30.     During cross examination, Lewis explained that his office did not have a system in place to clear conflicts in cases (2255 Tr. Pg. 34-35).  Lewis also confirmed that he was not aware of his father representing a co-defendant at the same time Lewis represented Shockey (2255 Tr. Pg. 36-37) and Lewis only became aware of him and his father representing co-defendants in the case when Shockey had his second filing in his § 2255 case (2255 Tr. Pg. 37).

### III.  Discussion

31.     Claims of ineffective assistance of counsel are mixed questions of law and fact, and the Eighth Circuit review the district court's legal determinations de novo and its underlying findings of fact for clear error. *See United States v. Robinson,* 301 F.3d 923, 925 (8th Cir.2002). *United States v. Lockett*, 303 Fed. Appx. 373 (8th Cir. 2008).

32. The appropriate standard of review on appeal from denial of a § 2255 motion was stated by the Eighth Circuit in *Kress v. United States*, 411 F.2d 16, 20 (8th Cir. 1969): "(A) judgment cannot be lightly set aside by collateral attack, even on habeas corpus. When collaterally attacked, the judgment of a court carries with it a presumption of regularity". *Smith v. United States*, 339 F.2d 519, 526 (8th Cir. 1964), quoting *Johnson v. Zerbst*, 1938, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed.2d 1461. In a § 2255 proceeding, the burden of proof with regard to each ground for relief rests upon the petitioner, *Amer v. United States*, 367 F.2d 803, 805 (8th Cir. 1966); *Smith v. United States*, supra, 339 F.2d at 526; *Skinner v. United States*, 326 F.2d 594, 597 (8th Cir. 1964); and the findings of the trial court must be sustained unless clearly erroneous, *Amer v. United States*, supra, 367 F.2d at 806.

33. Claims alleging ineffective assistance of counsel are governed by the standard set forth in *Strickland*. "This standard requires [the applicant] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (quoting *Lawrence v. Armontrout*, 961 F.2d 113, 115 (8th Cir. 1992)). This analysis contains two components: a performance prong and a prejudice prong.

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690, while at the same time refraining from engaging in hindsight or second guessing of trial counsel's strategic decisions. *Id*. at 689. Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lawrence*, 961 F.2d at 115 (quoting *Strickland*, 466 U.S. at 694).

*Nave*, 62 F.3d at 1035.

The Supreme Court has held that the two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

To prevail on a claim of error regarding the guilty plea, a movant must show that "there is a reasonable probability that, but for counsel's errors, [the movant] would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59; *Thomas v. Lockhart*, 738 F.2d 304, 307 (8th Cir. 1984). Further, the "prejudice" inquiry will often require the court to assess whether the alleged error, if corrected, would have resulted in an acquittal at a subsequent trial. *Hill*, 474 U.S. at 59-60. To establish prejudice in the sentencing context, a defendant must show a reasonable probability that, but for counsel's errors, the defendant would have received a lesser sentence than he did. *Jeffries v. United States*, 721 F.3d 1008, 1014 (8th Cir. 2013) (citing *Puckett v. United States*, 556 U.S. 129, 142 n. 4 (2009)); *see also United States v. Grammas*, 376 F.3d 433, 438 (5th Cir. 2004) (to prove *Hill's* prejudice prong, defendant must demonstrate a reasonable probability that, but for his attorney's actions, he would have received a "significantly less harsh" sentence).

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 694). "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen*, *id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Failure to satisfy both prongs is fatal to the claim. *Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997) (no need to "reach the performance prong if we determine that the defendant suffered no prejudice from the alleged ineffectiveness"); *see also DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000).

34. "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Voytik v. United States*, 778 F.2d 1306, 1308 (8th

Cir. 1985); *see also Carpenter v. United States*, 720 F.2d 546, 548 (8th Cir. 1983) (conclusory allegations are insufficient to rebut the presumption of competency granted to defense counsel); *United States v. Bryson*, 268 F.3d 560, 562 (8th Cir. 2001) (conclusory allegations are insufficient to establish ineffective assistance of counsel).

35. The only evidence Shockey provided to this Court was his testimony that his two attorneys lied to him. Shockey alleged that Lewis lied to him about the amount of time he would serve (2255 Tr. Pg. 19) that induced him to plead guilty.

36. In his first argument[5], Shockey argued that he was never informed of any conflict that is existed with his first attorney. Testimony at Shockey's hearing revealed that Ian Lewis withdrew from Shockey's case the moment he became aware of an office conflict and information that Shockey provided created the conflict (2255 Tr. Pg. 30).

37. The Federal Public Defender's office represents a large number of clients in the Western District of Missouri. The fact that a conflict was discovered at a later period which was not initially known is unremarkable. These undisputed facts demonstrate that defense counsel acted appropriately when the conflict was discovered.

38. Contrary to Shockey's claim, a claim of conflict of interest is not per se prejudicial. Under Strickland, prejudice is presumed only where the defendant shows that defense counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." 466 U.S. at 692 (quoting Cuyler v. Sullivan, 446 U.S. 335, 348-49 (1980) (denying habeas relief where no evidence was presented of an involuntary or unintelligent plea)).

---

[5] See section 15(a) and (b). As an after the fact argument, Shockey tried to argue that Lewis's father representation of a co-defendant prejudiced his case. However, Lewis testified that he was not aware that his father represented a co-defendant (2255 Tr. Pg. 37) until Shockey brought to his attention in his § 2255 reply (D.E. 21, pg. 2-3). Despite this familial conflict, Shockey did not show to this Court that he was prejudiced by this apparent mistake.

Defense counsel cannot be "struggling to serve two masters" when counsel was unaware that a conflict existed within the office.

39. Defense counsel withdrew prior to sentencing, shortly after the guilty plea. Shockey does not assert that he would have moved to withdraw his guilty plea. At the first sentencing hearing, this Court offered Shockey the opportunity to withdraw his guilty plea, for an unrelated reason, and he refused (D.E. 235, pg. 7). Shockey does not contend he would have insisted on a trial and that a jury would have acquitted him at the trial. Shockey simply presumes prejudice.

40. Shockey was given an opportunity to address this Court. Shockey did not raise any objections to his defense counsel's performance or his guilty plea at the time. Shockey did not raise the conflict of interest or the substitution of counsel (D.E. 211, pg. 19-21). Shockey's belated misgivings about his guilty plea and dissatisfaction with his sentence is not grounds to overturn his conviction or sentence.

41. Shockey insisted in his § 2255 (D.E. 1 and 5) filings that he would not plead guilty until he was certain the prosecutor had copies of the fraudulent checks. Contrary to his § 2255 arguments, Shockey did plead guilty.[6]

42. "A guilty plea waives all defects except those that are 'jurisdictional.'" *United States v. Todd*, 521 F.3d 891, 895 (8th Cir. 2008); *Houser v. United States*, 508 F.2d 509, 516 (8th Cir. 1974). "Stated differently, a valid guilty plea forecloses an attack on a conviction unless 'on the face of the record the court had no power to enter the conviction or impose the sentence.'" *Walker v. United States*, 115 F.3d 603, 604 (8th Cir. 1997) (quoting *United States v. Vaughan*, 13 F.3d

---

[6] Shockey also argued (See 15 (d), (g) and (h)) that Lewis promised him that he would be held to the loss amounts in the plea agreement and he would receive credit for his time in Arkansas for his sentence in the Western District of Missouri. Lewis emphatically denied any promises were made to Shockey about the sentence he would receive for pleading guilty (2255 Tr. Pg. 26-27). Lewis also denied that Shockey requested that he file a motion to suppress (2255 Tr. Pg. 27).

1186, 1188 (8th Cir. 1994)); see also *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (movant may only attack the voluntary and intelligent character of the guilty plea).

43. Despite his belated assertion that he would not plead guilty until he received the checks seized from Tulsa, Shockey pleaded guilty. This issue was explored in depth during the two sentencing hearings. Shockey declined an opportunity from this Court to withdraw his guilty plea.

44. At the first sentencing hearing, Shockey objected to the intended loss amount, arguing he should be held accountable only for the actual loss (D.E. 235, pg. 6). Shockey was given an opportunity to proceed to trial, and he declined to withdraw his guilty plea. (D.E. 235, pg. 6-7). After a discussion of the intended loss, defense counsel stated that Shockey believed the loss amounts were "contrived" (D.E. 235, pg. 7-10). Defense counsel stated that he had not reviewed individual checks with Shockey, and was unaware if prior counsel had reviewed individual checks (D.E. 235, pg. 10). Shockey again requested that this Court proceed with the sentencing hearing, rather than requesting the offered relief of withdrawing his guilty plea (D.E. 235, pg. 10-11). Further discussion of the relevant conduct issue continued, with Shockey eventually requesting the hearing be continued (D.E. 235, pg. 11-22). During this discussion, the probation officer noted that he did not have copies of the checks (D.E. 235, pg. 14). The Government noted that the checks were likely in the custody of the case agent (D.E. 235, pg. 20). PSR addendums were released discussing the relevant conduct.

45. At the second sentencing hearing, defense counsel stated that Shockey was asserting that he had never possessed unpassed checks, seized in Tulsa during his arrest (D.E. 211, pg. 5-7). Shockey contended that the Government had failed to prove the checks existed (D.E. 211, pg. 5-6).

46.     This Court noted it had reviewed the reports and would overrule the relevant conduct objection. (D.E. 211, pg. 8-9.)  Shockey personally addressed this Court (D.E. 211, pg. 19-21). Despite knowing that the Government had not produced actual copies of the Tulsa checks, but rather just reports of the checks, Shockey did not request to withdraw his guilty plea.

47.     Shockey has not demonstrated that he "would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59.

48.     Shockey also fails to prove he would have been acquitted at trial.  Shockey contends that defense counsel told him that he would be acquitted without the evidence seized from Tulsa. Shockey concludes that he would have insisted on a trial, and suggests he would have been acquitted based on that advice.  Even without the evidence from Tulsa, Shockey and his co-conspirators successfully passed checks, causing actual losses of $145,339.28.  Numerous co-conspirators would have testified against Shockey.  Shockey provides no analysis demonstrating he would have been acquitted, despite the extensive evidence outside of the Tulsa arrest evidence. Shockey's contention is a conclusory allegation and inherently incredible.

49.     Shockey, a man with 51 criminal history points and 18 felony convictions for theft by deception, forgery and fraud, has lived a life of dishonesty in pilfering money from unsuspected victims (D.E. 149 ¶¶ 41, 42, 45, 46, 48, 49, 50, 54, 55, 56, 57, 58, 59, 61, 64, 65, 66, 67).  He has offered no evidence other than his good word that his attorney Ian Lewis made alleged representations about the sentence he would receive if he pleaded guilty.  Even his unequivocal plea colloquy between him and the Court on the day of his guilty plea belies his recent allegation

of Lewis's promised five to six year prison sentence if he pleaded guilty (2255 Tr. Pg. 6). An sentence allegation that Lewis emphatically denied occurred (2255 Tr. Pg. 33).[7]

50. Shockey failed to show that his defense counsel had in fact made the alleged representations about his sentence, and failed to show that there is a reasonable probability that, but for this alleged deficiency in counsel's performance, he would not have pleaded guilty. *See Iron Wing v. United States,* 34 F.3d 662, 665 (8th Cir. 1994); *Ramey v. United States,* 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam) (§ 2255 movant alleging ineffective assistance must overcome "strong presumptions" of counsel's competence). Given his strong reflective position on this issue, it somewhat baffling that Shockey did not move to withdraw his guilty plea at sentencing.

51. This Court asked Shockey if he wanted to go to trial and Shockey silently affirmed through his attorney that "he did not want to withdraw his plea in any way, [he] discussed that . . . [and] he's not interested in withdrawing his plea" (D.E. 235, pg. 6 - 7). Not once during the first sentencing hearing did Shockey ever tell this Court he wanted to set aside his guilty plea because

---

[7] Shockey agreed that no promises regarding the sentence had been made to induce a guilty plea. (D.E. 93, pg. 16). Shockey stated that he had read the agreement and had no questions regarding the agreement (D.E. 217, pg. 4). At the hearing, Shockey again asserted that no promises had been made to entice him to plead guilty (D.E. 217, pg. 5). Shockey agreed that this Court would determine the Sentencing Guidelines and that this Court could impose any sentence within the statutory range of punishment, even varying from the advisory Sentencing Guidelines (D.E. 217, pg. 7-8). Statements made by a defendant in court under oath should not be lightly set aside and "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 US. 63, 74 (1977); see also *Ingrassia v. Armontrout*, 902 F.2d 1368, 1370 (8th Cir. 1990) (representations made during the plea hearing "carry a strong degree of verity and pose a formidable barrier in any subsequent collateral proceedings"). Shockey's statements under oath refute his claim that defense counsel promised him a lesser sentence. The "inaccurate advice of counsel about the sentencing guidelines or likely punishment does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range." *United States v. Quiroga*, 554 F.3d 1150, 1155-56 (8th Cir. 2009).

his first attorney lied to him about the sentence he would receive. Shockey's only argument at his first sentencing hearing was his objection to a 14-level enhancement.

52. Moreover, Shockey's so called reliance upon an alleged promise by Lewis as to the type of sentence he would receive for a crime committed while he was on court supervision disregards his previous experience with sentencing courts.

53. His criminal history reveals that Shockey received a 360 month state sentence for forgery, criminal possession of a forgery device and possession of drug paraphernalia on April 18, 2007 (D.E. 149, pg. 17 ¶ 65).

54. He also received a 144 month state sentence for theft by deception on October 13, 2005 (D.E. 149, pg. 15, ¶ 61).

55. In addition, he received a 120 month state sentence for forgery second on January 19, 2005 (D.E. 49, pg. 15, ¶ 59).

56. It would seem illogical that a skilled mountebank like Shockey could actually believe he would receive a lesser sentence in federal court than he would for the significant state sentences he already had under his belt.

57. Shockey's incredulous claim of ineffective assistance of counsel against Lewis is without merit and should be denied.

58. Shockey also pointed the finger at his second lawyer in his motion to set aside his conviction (See 15 (e) and (f)). According to Shockey, Coatney failed to investigate four checks that Shockey had in his possession that were used in determining his intended loss and Coatney did not provide case law to support Shockey's objection to the use of these four checks in calculating his intended loss (2255 Tr. Pg. 20). It is this inaction that Shockey now claims fell short of Coatney's obligation to represent him and that action prejudiced Shockey in some manner.

-16-
Case 6:19-cv-03108-MDH   Document 57   Filed 11/25/20   Page 16 of 20

59. Shockey's second attorney Jason Coatney vehemently argued against the 14-level enhancement. As this Court noted at the first sentencing hearing that Shockey wanted to proceed without any further delay with the understanding the 14-level enhancement in paragraph 25 of the Presentence Investigation Report would be applied (D.E. 235, pg. 15). This Court asked Shockey if wanted to proceed with the information currently available. His attorney responded in the affirmative. The Government then pressed that Shockey waive any argument that he may have to [14-level] guideline calculation. This Court then asked Shockey specifically he wanted to waive his objection to the 14-level enhancement. Shockey stated to this Court, "Yes, sir" (D.E. 235, pg. 15-16). Later in the hearing, Coatney rose again and asked the Court to continue the matter in order for him to file a formal objection to Presentence Investigation Report (D.E. 235, pg. 21).

60. On April 14, 2016, Coatney filed three objections related to the loss amounts (D.E. 204, pg. 1). As a result, Shockey's loss amounts (actual and intended) during the conspiracy went from $681,474.90 (D.E. 197, pg. 1) to $592,427.55 (D.E. 204, pg. 2).[8]

61. In addition, Coatney successfully argued against a sentencing relocation enhancement in order to avoid detection (§ 2B1.1(b)(10)(A)). As a result, Shockey's total offense level was reduced from a 28 to 26 (D.E. 204, pg. 2).[9] Shockey's Guideline Range went from 140 to 175 months to 120 to 150 months (D.E. 204, pg. 2). This was a good result that Coatney obtained for Shockey. It stretches the imagination on how his second attorney's representation fell short of the *Strickland* standard.

---

[8] The reduced amount of losses did not reduce Shockey's enhancement levels since the loss amounts were more than $550,000 (§2B1.1(b)(1)(H).

[9] On December 28, 2015, Shockey received a reduction in his offense level calculations as a result of a 2015 Guidelines Manual change that essentially reduced his original PSR total offense level from 30 (D.E. 149, pg. 9, ¶36) to 28 (see D.E. 183, pg. 1).

62. A claim of ineffective assistance of counsel may be sufficient to attack a sentence under § 2255; however, the "movant faces a heavy burden." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). In such cases, the Court must scrutinize the ineffective assistance of counsel claim under the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* Under *Strickland*, a prevailing defendant must prove "both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case." *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988). As to the "deficiency" prong, the defendant must show that counsel "failed to exercise the customary skills and diligence that a reasonably competent attorney would [have] exhibit[ed] under similar circumstances." *Id.* (quoting *Hayes v. Lockhart*, 766 F.2d 1247, 1251 (8th Cir. 1985)). As to the "prejudice" prong, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Cheek*, 858 F.2d at 1336 (quoting *Strickland*, 466 U.S. at 694). To be sure, "[c]ounsel's failure to advance a meritless argument cannot constitute ineffective assistance." *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994).

63. Shockey contends that this Court relied upon only the disputed facts in the PSR. Shockey asserts defense counsel should have presented additional case law in support of the objection. Shockey contends that defense counsel failed to challenge certain checks that were made out for large amounts, including one check for $207,085.75 (D.E. 204, pg. 2).

64. "Sentencing enhancements must be proved by a preponderance of the evidence . . . but 'the district court need only make a reasonable estimate of loss rather than a precise determination.'" United States v. Aden, 830 F.3d 812, 816 (8th Cir. 2016) (quoting United States v. Farrington, 499 F.3d 854, 859-60 (8th Cir. 2007)); see also U.S.S.G. § 2B1.1 cmt. n. 3(C) ("The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For

this reason, the court's loss determination is entitled to appropriate deference."). No error exists when "the determination is plausible in light of the record as a whole." Id. (quoting Farrington and United States v. Coon, 187 F.3d 888, 899 (8th Cir. 1999)).

65. As discussed extensively supra, this Court litigated the loss amount during the two sentencing hearings. During the second sentencing hearing, this Court noted that it had read the memorandum of interview dated October 30, 2014; the summary of investigation; and each of the addendums to the presentence report, and found the 14 point enhancement justified. (D.E. 211, pg. 8.) Shockey has failed to prove that this Court would have refused to apply the 14-point enhancement if defense counsel had presented general legal case law. Shockey has failed to demonstrate that any further objections to the loss amount would have been sustained. Shockey has failed to demonstrate that this Court would have imposed a lesser sentence given the obvious fact that Shockey was on court-ordered supervision at the time he committed the instant offense.

66. As this Court stated, "I frankly came into this courtroom thinking that a sentence above the guidelines was probably necessary for you. A person who is on supervised release for a financial crime and who immediately sets up a substantial network to again commit a financial crime is not getting the message" (D.E. 211, pg. 24).

67. Shockey has failed to prove prejudice and likewise his claim of ineffective assistance of counsel is without merit.

## II. Conclusion

Accordingly, for all of the reasons previously outlined, the Government respectfully requests that this Court deny the motion, filed by Shockey, seeking to vacate his conviction and sentence.

                    Respectfully submitted,

                    TIMOTHY A. GARRISON
                    United States Attorney

By    */s/ Abram McGull II*

                    ABRAM MCGULL II
                    Assistant United States Attorney

                    901 St. Louis, Suite 500
                    Springfield, Missouri 65806
                    Telephone: (417) 831-4406

                    *Attorneys for Respondent*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on November 25, 2020, to the CM-ECF system of the U.S. District Court for the Western District of Missouri for electronic delivery to all counsel of record, and mailed to:

                    Phillip Daren Shockey
                    Reg. No. 05582-010
                    FCI Memphis
                    P.O. Box 34550
                    Memphis, Tennessee 38184

                    */s/ Abram McGull II*
                    Abram McGull II
                    Assistant United States Attorney